[635 NYS2d 704]

In the Matter of PACER, Inc., Respondent, v Planning Board of the City of Middletown, Appellant.

Third Department, December 7, 1995

APPEARANCES OF COUNSEL

*Richard Guertin, Corporation Counsel* of City of Middletown *(Alex Smith* of counsel), for appellant.

*James G. Sweeney,* Goshen, for respondent.

*Barbara J. Samel,* Albany, for New York State Conference of Mayors and Municipal Officials, *amicus curiae.*

**OPINION OF THE COURT**

SPAIN, J.

Petitioner has been incorporated as a not-for-profit corporation under the provisions of the Not-For-Profit Corporation Law since 1983. In August 1983 petitioner acquired a boarding house located at 24 Roberts Street in the City of ·Middletown, Orange County, and has used it continuously as a boarding house since that time. After acquiring the property, petitioner became involved in a special needs housing program with the State and provides eight single-room occupancy residential units for low-income and homeless individuals. Subsequently, the City, through its Assessor, granted a mandatory real property tax exemption for the property pursuant to RPTL 420-a (1). The property is located in a C-3 or general business zoning district which required a special use permit to operate a boarding house.

In May 1994 the City revoked all existing permits for boarding and rooming houses and directed the owners and operators of such houses to apply anew for special use permits; thereafter, petitioner applied to respondent for a special use permit. The City, claiming to be in dire financial condition, had established a policy opposing all projects involving tax exempt property unless the applicants agreed to either give up their tax exemption and restore the property to the tax rolls or agree to an annual "payment in lieu of taxes" (hereinafter PILOT). A public hearing was held wherein respondent took testimony from petitioner and elicited commentary from the public. At the hearing, petitioner introduced evidence to show that it met all the criteria under the City's codes and Zoning Ordinance for operating a rooming house. The only evidence presented at the hearing with respect to the City's financial condition was testimony from the Mayor that approximately 42% of the assessed property in the City was tax exempt; he also spoke about the City's policy of opposing all projects involving tax exempt property.

On August 18, 1994, respondent denied petitioner's application, stating its grounds, in relevant part, as follows:

"1. The applicant refused to take steps to either put the subject property back onto the municipal tax rolls or to negotiate a pilot payment with the City. Given the City's dire financial situation brought on in significant part by the abatement of 42% of the City's property and given the City's present policy not to support further tax abated property for any

purpose, the applicant's refusal to pay taxes or a pilot was found to contribute to the deterioration of the quality of life in the City and adversely affect the public welfare by impeding the ability of the City to provide needed services.

"2. Testimony revealed that the boarders at 24 Roberts Street pay rent in the amount of $229.00 per month. Given that the payment of taxes or a pilot would result in only a modest increase in rent per boarder, it was found that the applicant's refusal to pay its fair share for the provision of City services was unreasonable and harmful to the financial well being of the City." Petitioner commenced this CPLR article 78 proceeding seeking to annul respondent's determination on the basis that it was illegal, arbitrary and capricious. Supreme Court annulled the determination and ordered that the special use permit be granted. Respondent appeals.

■ We are of the view that a municipal planning board is without authority to deny a special use permit solely because of the tax exempt status of the property and that the tactics used by respondent in this case were illegal. "Unlike a variance, a special use permit does not involve a use of property forbidden by the zoning ordinance but instead constitutes a recognition of a use which the ordinance permits under stated conditions" (*Matter of Texaco Ref. & Mktg. v Valente*, 174 AD2d 674, 675). The inclusion of boarding houses among the uses permitted in the zoning district in which petitioners property is located "is tantamount to a legislative finding that, if the special exception conditions are met, such a use will not adversely affect the neighborhood * * *. Although there is no entitlement to such a special permit, once the petitioner shows that the contemplated use is in conformance with the conditions imposed, the special permit must be granted unless there are reasonable grounds for denying it that are supported by substantial evidence * * *. Moreover, the petitioner's burden of proof is much lighter than the heavy burden required for a variance" (*Matter of C & A Carbone, Inc. v Holbrook*, 188 AD2d 599, 600).

Code of the City of Middletown (Zoning Ordinance) § 123-43 (B) sets forth the conditions which must be considered by respondent before a special use permit is approved. Included among the conditions is a provision that the use "will be in harmony with the appropriate and orderly development of the district" (*id.,* § 123-43 [B] [2]); others relate to, *inter alia,* fire

safety, police access and traffic access.* Nowhere in the ordinance does the legislative body of the City declare that the tax exempt status of a parcel be considered as a factor. It is clear that respondent had no objection to the manner in which the property was being used by petitioner and it is equally clear that the operation of the property as a boarding house did not, by its use and character, adversely affect the public health, safety or welfare of the surrounding neighborhood or the City as a whole; the fact that the property's tax exempt status negatively affects the financial condition of the City has absolutely no relationship, even remotely, to the "uses" contemplated by the legislative body of the City in enacting its Zoning Ordinance.

We conclude that petitioner's use of the property in question was in conformance with the conditions or standards for the issuance of a special use permit set forth in the Zoning Ordinance. Respondent went beyond the scope of its authority; its decision is not supported by substantial evidence and, in light of the foregoing, was arbitrary and capricious (*see, Matter of Lee Realty Co. v Village of Spring Val.*, 61 NY2d 892; *Matter of C & B Realty Co. v Town Bd.*, 139 AD2d 510).

Furthermore, the New York Constitution provides that real property tax exemptions may be granted to charitable institutions by legislation and, once granted, cannot be repealed (NY Const, art XVI, § 1). RPTL 420-a provides that real property owned by a charitable institution shall be tax exempt (RPTL 420-a [1] [a]). In *Matter of Diocese of Rochester v Planning Bd.* (1 NY2d 508, 524-525), the Court of Appeals, citing both NY Constitution, article XVI, § 1 and Tax Law former § 4 (6) (which is the predecessor to RPTL 420-a), held that a municipal corporation cannot deny a building permit to a tax exempt religious institution on the basis of the municipality's loss of potential tax revenue (*see, Jewish Reconstructionist Synagogue v Incorporated Vil. of Roslyn Harbor*, 38 NY2d 283, 287, *cert denied* 426 US 950; *Walz v Tax Commn.*, 24 NY2d 30, *affd* 397 US 664). We reject respondent's argument that this line of case law does not apply to charitable institutions which have

---

* The Code of the City of Middletown (Zoning Ordinance) § 123-43 (B) also states, in part: "In approving any such *use*, the Planning Board shall take into consideration the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular, and may prescribe appropriate conditions and safeguards as may be required in order that the result of its action may, to the maximum extent possible, further the expressed intent of this ordinance" (emphasis supplied).

no religious affiliation. Respondent's attempt to alter the tax exempt status of the property in question by extorting a PILOT or a waiver of petitioner's tax exempt status is a clear violation of the constitutional mandate which prohibits the alteration or repeal of a tax exemption extended to what the State has determined to be a charitable institution (NY Const, art XVI, § 1).

The Constitution and the State Legislature, in the furtherance of the general welfare, have established a clear policy that charitable institutions are to be free, if they so choose, from local taxes; respondent's attempt, in the instant matter, to circumvent that which has been ordained by higher authority is patently illegal.

Accordingly, we remit the matter to respondent for the purpose of issuing a special use permit to petitioner, subject to appropriate conditions as it may find necessary.

MERCURE, J. P., WHITE, CASEY and PETERS, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by remitting the matter to respondent for further proceedings not inconsistent with this Court's decision, and, as so modified, affirmed.